IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT MAJOR ROLLO,
    Plaintiff,

vs.                                       Case No.:   3:19cv4443/LAC/EMT

SHERIFF BOB JOHNSON, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert Major Rollo ("Rollo"), an inmate of the Santa Rosa County Jail ("Jail"), is proceeding pro se and in forma pauperis in this civil rights case filed under 42 U.S.C. § 1983.  Presently before the court is Rollo's Amended Complaint (ECF No. 8).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by Rollo, it is the opinion of the undersigned that all his claims against all Defendants should be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

I.    BACKGROUND

Rollo names three Defendants in this case: (1) Bob Johnson, Sheriff of Santa Rosa County, (2) Michelle Lucas, Head Administrator of Wellpath, and (3) Phillip Baska, Director of Aramark, Corp. (ECF No. 8 at 1–2). Rollo claims that Defendants violated his civil rights by exposing him to unsanitary conditions at the Jail and failing to provide adequate medical treatment for an ear condition he developed allegedly as a result of his exposure to black mold (*id.* at 5–6). Rollo seeks compensatory damages and injunctive relief (*id.* at 7).

II.    STATUTORY SCREENING STANDARD

Because Rollo is a prisoner proceeding in forma pauperis, federal statutes require the court to dismiss this case if the court determines that his allegations fail to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). The statutory language "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," therefore, dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and construed in the light most favorable to the plaintiff. *See Davis v. Monroe Cty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997).

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation marks and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation marks and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

## III.   ROLLO'S FACTUAL ALLEGATIONS

The court includes factual allegations from Rollo's Amended Complaint (*see* ECF No. 8 at 5–6) and any clarifying facts included in his initial Complaint (ECF No. 1). Rollo alleges while he was an inmate of the Jail from February 22, 2018 to April 20, 2018, he developed "problems" with his ears (Complaint at 5). Rollo alleges he filed grievances and spoke with "medical" many times and was told that black mold was causing the problems (*id.*). Rollo alleges he was provided ear drops, but he "continued having issues" (*id.*). Rollo alleges black mold grows in the air vents of the dormitory and the railing above the shower (*id.*).

Rollo alleges he was reincarcerated in the Jail over a year later, on June 19, 2019, and is still there (Complaint at 5; Amended Complaint at 5–6). He alleges his ears have "swollen shut" several times due to black mold (*id.*). Rollo alleges he now has problems hearing, which he never experienced until he was incarcerated at the Jail (*id.*). Rollo alleges he was again provided ear drops and ibuprofen for

pain, but "they will not repair the damage already done" (*id.*). He alleges he needs to be referred to an ear specialist (Amended Complaint at 6). Rollo alleges Wellpath is responsible for providing medical treatment to inmates at the Jail (*id.*).

Continuing, Rollo alleges cleanliness is a "major problem" at the Jail (Complaint at 5; Amended Complaint at 5–6). He alleges the dormitory has been cleaned with bleach only twice in the past seven months, and the black mold has never been cleaned from the air vents (Amended Complaint at 5). Rollo alleges he works in the kitchen, and black mold is growing in the vents above the area where food is prepared (*id.* at 5–6). Rollo also alleges that eating utensils are stored in the same room as boots (*id.* at 6). He additionally complains that inmates have no access to drinking fountains and must use sinks as the source of drinking water (*id.*). He alleges forty (40) inmates use the sink "to shave over and everything else" (*id.*). Rollo alleges Defendant Sheriff Johnson is responsible for conditions at the Jail, and Aramark, Corp., of which Defendant Baska is the "Director," is responsible for maintenance of the Jail facility (*id.*).

Rollo claims Defendants are violating his civil rights (Amended Complaint at 5, 7). He seeks compensatory damages and an injunction requiring Defendants to refer him to an ear specialist (*id.* at 7).

## IV.   DISCUSSION

As an initial matter, even though Defendants Baska and Lucas appear to be representatives of private, non-governmental entities, "[w]here a function which is traditionally the exclusive prerogative of the state . . . is performed by a private entity," that private entity, and its representatives, may be held liable under § 1983. *Ancata v. Prison Health Servs.*, 769 F.2d 700, 703 (11th Cir. 1985).   Managing the physical facility of a county jail and providing medical care to inmates are functions traditionally performed by a governmental entity; therefore, the private-actor Defendants may be held liable under § 1983.

### A.   **Claims of Unsanitary Conditions at the Jail**

Rollo contends Sheriff Johnson and Defendant Baska (the "Director" of Aramark, Corp.) violated, and continue to violate, his civil rights by failing to provide sanitary conditions at the Jail.   Rollo specifically complains about the presence of black mold in the air vents, the storage of eating utensils with footwear, and the absence of a source of drinking water separate from the sinks where inmates shave and perform other activities.

The conditions under which pretrial detainees are held are reviewed under the Fourteenth Amendment's Due Process Clause.   *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1344 (11th Cir. 2016).   But the Eleventh Circuit has historically treated

pretrial detainees' Fourteenth Amendment claims and convicted prisoners' Eighth Amendment claims identically. *See, e.g., Keith v. DeKalb Cty.*, 749 F.3d 1034, 1044 n.35 (11th Cir. 2014) (stating that "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments" (quotation omitted)).[1]

A detainee or prisoner claiming that the conditions of his confinement are unconstitutional must show (1) a condition of confinement that inflicted unnecessary pain or suffering, (2) the defendant's deliberate indifference to the condition, and (3) causation. *See LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993). Deliberate indifference, in turn, has three elements: (1) the defendant's subjective knowledge of a risk of serious harm, (2) disregard of that risk, (3) by conduct that is more than gross negligence. *See Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010). The evidence must demonstrate that, "with knowledge of the infirm

---

[1] In *Kingsley v. Hendrickson*, the Supreme Court stated that the language of the Eighth Amendment's Cruel and Unusual Punishment Clause and the Fourteenth Amendment's Due Process Clause "differs, and the nature of the claims often differ." — U.S. —, 135 S. Ct. 2466, 2473–76, 192 L. Ed. 2d 416 (2015) (adopting a different test to evaluate pretrial detainees' excessive-force claims than the test used to evaluate convicted prisoners' excessive-force claims). The Eleventh Circuit recently stated, however, that *Kingsley* "is not squarely on point with and does not actually abrogate or directly conflict with" precedent outside of the context of an excessive-force claim. *See Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017) (quotations omitted).

conditions, the official knowingly or recklessly declined to take actions that would have improved the conditions." *Id.* (alteration and quotation omitted).

Supervisory officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "Because vicarious liability is inapplicable to [ ] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Under *Iqbal*, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677. "[S]upervisors are liable under [section] 1983 'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)). Facts sufficient to establish a causal connection include those "which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Keating*, 598 F.3d at 762 (internal quotation omitted). The factual allegations of the complaint must plausibly show that the supervisory official

acted with the same mental state required to establish a constitutional violation against his subordinate.  *See Franklin*, 738 F.3d at 1250.

In Rollo's Amended Complaint, he does not mention Defendant Baska in his factual allegations—all he alleges is that Aramark, the entity of which Baska is the "Director," "aren't [sic] doing their job to stay on top of their maintenance" (ECF No. 8 at 6).  Similarly with respect to Defendant Sheriff Johnson, Rollo alleges only that the Sheriff "is responsible" for the presence of black mold in the air vents (*id.*). These allegations fail to plausibly suggest that either Director Baska or Sheriff Johnson subjectively knew of the allegedly unsanitary conditions at the Jail. Further, Rollo's facts do not plausibly suggest that either supervisor knowingly or recklessly declined to take actions that would have improved the conditions. Therefore, Rollo's claims against Defendants Johnson and Baska should be dismissed for failure to state a plausible claim for relief.

### B. Claims of Deliberate Indifference to Medical Needs

Rollo contends Defendant Lucas (the "Head Administrator" of Wellpath) violated, and continues to violate, his civil rights by failing to provide adequate medical treatment for his ear condition.  Rollo specifically complains he has not been referred to an ear specialist for evaluation and treatment.

A constitutional claim of deprivation of medical treatment requires satisfying two minima (from which the case law has ultimately derived four requirements). First, there must be, objectively speaking, conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation—one "denying 'the minimal civilized measure of life's necessities.'" *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish. *See Wilson*, 501 U.S. at 300 ("The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual punishment. If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphasis in original)).

In the context of denial of medical care, each of these minima has been more specifically described as encompassing two subsidiary requirements. To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively "serious medical need[ ]," *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), one that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811

(1994). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Second, it is necessary to demonstrate that the response made by the public official to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law. *Estelle*, 429 U.S. at 105–06. Similarly, to show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of "deliberate indifference," *id.* at 105, which is in turn defined as requiring two separate things: "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . draw[ing of] the inference," *Farmer*, 511 U.S. at 837. Ultimately, there are thus four requirements: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts. *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

Here, Rollo alleges Wellpath failed to give him necessary medical attention, but he does not mention Defendant Lucas in the factual allegations of the Amended

Complaint (*see* ECF No. 8 at 5–6).  In the absence of any allegation that Defendant Lucas personally participated in a decision regarding his medical treatment, or any facts which support an inference that Lucas directed Rollo's medical providers to act unlawfully or knew that they would act unlawfully and failed to stop them from doing so, Rollo has not stated a plausible constitutional claim against Defendant Lucas.  Therefore, his claims against Defendant Lucas should be dismissed under § 1915(e)(2)(B)(ii) and 1915A(b)(1).

## V.  CONCLUSION

Rollo's factual allegations fail to state a plausible constitutional violation against any named Defendant.  This is so despite the court's having previously advised Rollo of the relevant legal standards and the pleading deficiencies of his initial Complaint, and the court's providing him an opportunity to file an amended complaint which included sufficient factual allegations to state a plausible claim for relief (*see* ECF No. 7).  As there is no indication that providing Rollo yet another opportunity to amend would produce a pleading which states a plausible constitutional claim, the undersigned recommends that Rollo's claims be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

Accordingly, it is respectfully **RECOMMENDED**:

1. That Plaintiff's claims against Defendants be **DISMISSED** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1); and

2. That the clerk of court be directed to enter judgment accordingly and close the case.

At Pensacola, Florida, this 19th day of March 2020 .

/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**